**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND DIVISION**

| | |
|---|---|
| *In re* PROPETRO HOLDING CORP. SHAREHOLDER DERIVATIVE LITIGATION | MO:20-cv-00030-DC (Consolidated Derivative Action) |

**DEFENDANT IAN DENHOLM'S MOTION TO DISMISS**
**PLAINTIFFS' AMENDED CONSOLIDATED DERIVATIVE COMPLAINT**

BELL | NUNNALLY LLP

*/s/ Jeffrey J. Ansley*
Jeffrey J. Ansley
State Bar No. 00790235
jansley@bellnunnally.com
Craig M. Warner
State Bar No. 24084158
cwarner@bellnunnally.com
Parker A. Burns
State Bar No. 24091843
pburns@bellnunnally.com

2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile

**ATTORNEYS FOR DEFENDANT**
**IAN DENHOLM**

# **TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   JOINDER TO PROPETRO'S MOTION TO DISMISS .................................................. 1

III.  APPLICABLE LEGAL STANDARDS ........................................................................ 2

    A.   Plaintiffs Fail to State A Claim Against Denholm Under Any Federal
         Pleading Standard. ................................................................................................ 2

    B.   The Heightened Pleading Requirement of Federal Rule of Civil Procedure
         9(b) Applies Because Plaintiffs' Claims are Based on Fraud. ................................ 3

IV.   ARGUMENT AND AUTHORITIES ............................................................................ 4

    A.   Plaintiffs' Contribution Claim Is Premature and Fails on its Merits. ....................... 4

    B.   Plaintiffs Fail to Adequately Plead that Denholm Breached Fiduciary Duties
         to ProPetro. .......................................................................................................... 5

         1.    *Generally Applicable Delaware Law on Fiduciary Duty Renders
               Plaintiffs' Pleadings Inadequate Against Denholm.* ...................................... 5
         2.    *Delaware Law Applying Fiduciary Duty Standards to Officers Renders
               Plaintiffs' Pleadings Inadequate against Denholm.* ...................................... 8
         3.    *Plaintiffs Do Not Plead Facts Adequate to Establish a Breach of
               Denholm's Duty of Loyalty or Duty of Care Sufficient to Vitiate
               the Business Judgment Rule.* ..................................................................... 12
         4.    *Plaintiffs Fail to Allege a Breach of Loyalty Claim Against
               Denholm Based on Any Alleged Related-Party Transaction.* ...................... 13
         5.    *As pled, Denholm's Tangential Connections to the Allegations
               Against Others at ProPetro Do Not Substantiate a Breach of
               His Fiduciary Duties.* ................................................................................ 16

    C.   Plaintiffs Fail to Adequately Plead Unjust Enrichment Against Denholm ............. 18

V.    CONCLUSION AND PRAYER .................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Stone ex rel. AmSouth Bancorporation v. Ritter*,
  911 A.2d 362 (Del. 2006) ..............................................................6, 7, 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..............................................................................2

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................2

*Brehm v. Eisner*,
  746 A.2d 244 (Del. 2000) ...................................................................13

*Brown v. Bilek*,
  401 F. App'x 889 (5th Cir. 2010) .........................................................3

*Broz v. Cellular Info. Sys., Inc.*,
  673 A.2d 148 (Del.1996) .....................................................................14

*United States ex rel. Capshaw v. White*,
  3:12-CV-4457-N, 2018 WL 6068806 (N.D. Tex. Nov. 20, 2018) ...................3, 5, 6

*In re Caremark Int'l Inc. Deriv. Litig.*,
  698 A.2d 959 (Del. Ch. 1996)............................................................6, 7

*Cede & Co. v. Technicolor, Inc.*,
  634 A.2d 345 (Del. 1993) ...................................................................12

*In re Cendant Corp. Derivative Action Litig.*,
  96 F. Supp. 2d 394 (D.N.J. 2000) .........................................................4

*Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*,
  497 F.3d 546 (5th Cir. 2007) ................................................................2

*Chen v. Howard Anderson*,
  87 A.3d 648 (Del. Ch. 2014).........................................................10, 15

*In re Citigroup Inc. S'holder Deriv. Litig.*,
  964 A.2d 106 (Del. Ch. 2009).............................................................6

*Davis v. Gutierrez*,
  No. 17-cv-147-JL, 2018 WL 1514869 (D. N.H., March 27, 2018)...................9, 10

*Desimone v. Barrows,*
    924 A.2d 908 (Del. Ch. 2007) ................................................................................8

*Dietrich v. Harrer,*
    857 A.2d 1017 (Del Ch. 2004) .......................................................................10, 15

*Dweck v. Nasser,*
    C.A. No. 1353-VCL, 2012 WL 161590 (Del. Ch. Jan. 18, 2012) ................... *passim*

*In re Dwight's Piano Co. v. Hendricks,*
    424 B.R. 260 (S.D. Ohio 2009) ......................................................................11, 12

*Gantler v. Stephens,*
    965 A.2d 695 (Del. 2009) ...............................................................................9, 15

*Hampshire Grp., Ltd. v. Kuttner,*
    C.A. No. 3607-VCS, 2010 WL 2739995, at *3 (Del. Ch. July 12, 2010) ...................... *passim*

*In re General Motors Co. Deriv. Litig.,*
    C.A. No. 9627-VGC, 2015 WL 3958724 (Del. Ch. June 26, 2015)...........................................7

*Hack v. Wright,*
    396 F. Supp. 3d 720 (S.D. Tex. 2019) ...........................................................5, 6, 7

*In re Nanthealth, Inc. Stockholder Litig.,*
    C.A. No. 2018-0302-AGB, 2020 WL 211065 (Del. Ch. Jan 14, 2020) ...............................20

*Lewy v. SkyPeople Fruit Juice, Inc.,* 11 Civ. 2700 (PKC), 2012 WL 3957916, at
    *18 (S.D.N.Y. Sept. 10, 2012) ......................................................................15

*Pike v. Edgar,*
    801 F. Supp. 907 (D. N.H. 1992) ......................................................................4

*Plotkin v. IP Axess Inc.,*
    407 F.3d 690, 696 (5th Cir. 2005) ....................................................................2

*Ryan v. Gifford,*
    935 A.2d 258 (Del. Ch. 2007) .........................................................................10, 15

*Searcy v. Knight (In re Am. Int'l Refinery),*
    402 B.R. 728 (Bankr. W.D. La. 2008) ...............................................................3

*Sherwin Pipeline, Inc. v. Sherwin Alumina Co., LLC (In re: Sherwin Alumina Co.,*
    *LLC),*
    952 F.3d 229 (5th Cir. 2020) ...........................................................................3

*Steiner v. Meyerson,*
    Civ. A. No. 13139, 1995 WL 441999 (Del. Ch. July 19, 1995)...............................13

*Taylor v. Kissner*,
    893 F.Supp.2d 659 (D. Del. 2012)...................................................................19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)........................................................................................15

*U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*,
    125 F.3d 899 (5th Cir. 1997) .......................................................................3, 5

*Triton Constr. Co., Inc. v. E. Shore Elec. Servs., Inc.*
    No. 3290-VCP, 2009 WL 1387115 (Del Ch. May 18, 2009)..................................19

*US W., Inc. v. Time Warner Inc.*,
    Civ. A. No. 14555, 1996 WL 307445 (Del. Ch. June 6, 1996) ..............................13

*VeroBlue Farms USA, Inc. v. Wulf*,
    No. 3:19-cv-00764, 2020 WL 3036661, at *11 (N.D. Tex. June 5, 2020)..............3

*Vitellone v. Evans*,
    No. H-13-1887, 2013 WL 6806179 (S.D. Tex. Dec. 20, 2013) ..............................8

*In re: Walt Disney Co. Derivative Litig.*,
    906 A.2d 27 (Del. 2006) ...........................................................................12, 13

*In re: Walt Disney Co. Derivative Litig.*,
    907 A.2d 693 (Del. Ch. 2005)....................................................................12, 13

*In re: Wonderwork*,
    611 B.R. 169 (Bankr. S.D.N.Y. 2020),....................................................9, 12, 13, 17

## Statutes

15 U.S.C. § 78u-4(f)(8).............................................................................................4

FED. R. CIV. P. 9(b) ....................................................................................... *passim*

FED. R. CIV. P. 12(b)(1).............................................................................................4

FED. R. CIV. P. 12(b)(6).........................................................................................2, 4

## I.   PRELIMINARY STATEMENT

The Consolidated Derivative Complaint should be dismissed because Plaintiffs improperly attempt to glom Denholm in with a litany of claims and separate defendants, without ever specifying how Denholm in particular allegedly violated an obligation to the shareholders.   The lawsuit – *as it pertains to Denholm* – essentially states: he was there and should have known bad acts were occurring.   This is patently insufficient under any federal pleading threshold.   Plaintiffs' claims fail due to lack of jurisdiction and standing, and due to Plaintiffs' failure to adequately plead demand futility.   Additionally, Plaintiffs' contribution claim against Denholm in particular is premature, and fails on its merits for the reasons articulated in Denholm's Motion to Dismiss Third Amended Class Action Complaint for Violations of the Federal Securities Laws in Case No. MO:19-cv-00217-DC (Doc. 92), incorporated herein by reference.   On the merits, Plaintiffs fail to adequately plead claims for breach of fiduciary duty or unjust enrichment against Denholm in particular.   Plaintiffs also do not adequately plead that Denholm had the responsibility to implement reporting or information systems or controls but "utterly failed" to do so; or, having implemented such a system or controls, consciously failed to monitor or oversee its operations. Plaintiffs likewise do not adequately plead that Denholm hid key information from the directors, or actively worked against the Company for personal gain.   Finally, Plaintiffs fail to adequately plead any nexus between Denholm's compensation and any malfeasance.   Accordingly, the Complaint fails to state any claim against Denholm.

## II.   JOINDER TO PROPETRO'S MOTION TO DISMISS

Denholm joins Defendant ProPetro Holding Corp.'s Motion to Dismiss the Consolidated Derivative Complaint.  (Doc. 67).  Denholm incorporates by reference the entirety of that motion, including ProPetro's factual summary, statements of law, and legal arguments.  Denholm adopts

ProPetro's motion in its entirety and cites only facts and law that are specifically relevant to Denholm.  In particular, Denholm joins and incorporates by reference the entirety of ProPetro's legal arguments and their factual bases regarding jurisdiction, standing, and demand futility, as though stated herein.

### III.   APPLICABLE LEGAL STANDARDS

**A.   Plaintiffs Fail to State A Claim Against Denholm Under Any Federal Pleading Standard.**

The Complaint fails to state a claim against Denholm and should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  Plaintiffs can withstand a motion to dismiss only by alleging "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), in light of "judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  As the Supreme Court held in *Twombly*, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Conclusory statements are insufficient to demonstrate facial plausibility.  *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.  "[T]he court does not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Cent. Laborers' Pension Fund v. Integrated Elec. Servs., Inc.*, 497 F.3d 546, 550 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

**B.** **The Heightened Pleading Requirement of Federal Rule of Civil Procedure 9(b) Applies Because Plaintiffs' Claims are Based on Fraud.**

Because Plaintiffs' claims are premised on fraud,[1] they must also meet the heightened particularity requirements of Rule 9(b).  *See Brown v. Bilek*, 401 F. App'x 889, 893-94 (5th Cir. 2010) (stating that Rule 9(b) applies to breach of fiduciary duty claims predicated on fraud); *Searcy v. Knight (In re Am. Int'l Refinery)*, 402 B.R. 728, 737 (Bankr. W.D. La. 2008) ("[I]f a breach of fiduciary duty claim is grounded in whole or in part on allegations of fraud, the fraud allegations must be pled in conformity with Rule 9(b).").  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where, and how of the alleged fraud."  *U.S. ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (internal quotation marks and citation omitted); *see also Sherwin Pipeline, Inc. v. Sherwin Alumina Co., LLC (In re: Sherwin Alumina Co., LLC)*, 952 F.3d 229, 235 n.22 (5th Cir. 2020) (same).

Group pleading is not permitted under Rule 9(b).  *United States ex rel. Capshaw v. White*, 3:12-CV-4457-N, 2018 WL 6068806, at *4 (N.D. Tex. Nov. 20, 2018) ("The Fifth Circuit and this district have clearly spelled out Rule 9(b)'s group pleading requirements.  Parties cannot merely lump all defendants together.") (internal quotation marks omitted); *VeroBlue Farms USA, Inc. v. Wulf*, No. 3:19-cv-00764, 2020 WL 3036661, at *11 (N.D. Tex. June 5, 2020) (stating that the Fifth Circuit "has never adopted the 'group pleading' doctrine").  To comply with Rule 9(b), "[t]here has to be some work that segregate[s] the alleged wrongdoing of one [defendant] from another."  *Capshaw*, 2018 WL 6068806, at *4.

---

[1] Complaint ¶¶ 96-99 ("Breach of Fiduciary Duty for Disseminating False and Misleading Information").

**DEFENDANT IAN DENHOLM'S MOTION TO DISMISS CONSOLIDATED DERIVATIVE COMPLAINT – Page 3**

## IV.   ARGUMENT AND AUTHORITIES

**A.   Plaintiffs' Contribution Claim Is Premature and Fails on its Merits.**

As an initial matter, Plaintiffs' contribution claim is not ripe for review. Plaintiffs seek contribution for damages that ***may*** arise "***[i]f*** ProPetro is ultimately found liable for violating the federal securities laws" in a securities class action suit pending before the Court (MO:19-cv-00217-DC)(the "Securities Class Action").   Complaint ¶ 108 (emphasis added).   But the right to contribution is derivative of a final judgment in a related case.   *See In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 394, 397 (D.N.J. 2000) (contribution claim not ripe because settlement had not been judicially approved); 15 U.S.C. § 78u-4(f)(8) (right of contribution applies to defendant who "becomes jointly and severally liable for damages in any private action"); *id.* at § 78u-4(f)(9) (statute of limitations for contribution claim calculated from date of final, nonappealable judgment).   Because there has been no determination of liability, damages, or settlement in the Securities Class Action, Plaintiffs' contribution claim is not ripe and should be dismissed under Rules 12(b)(1) and 12(b)(6).

In the alternative, Plaintiffs' claim for contribution against Denholm fails because, like the plaintiffs in the Securities Class Action, Plaintiffs here fail to identify material misleading statements or omissions by Denholm; and fail to adequately plead scienter or loss causation.   The same analysis applies here, as "there is no private federal cause of action for the *negligent* failure to comply with Section 10(b) and Rule 10b–5." *Pike v. Edgar*, 801 F. Supp. 907, 912 (D. N.H. 1992) (emphasis added).   Because Denholm thoroughly briefed these grounds in his Motion to Dismiss Third Amended Class Action Complaint for Violations of the Federal Securities Laws in the Securities Class Action and these same arguments apply to the merits of the derivative claim against Denholm under Section 10(b) in this case, he respectfully incorporates by reference his

brief and argument on these points as though fully set forth herein.  *See* MO:19-cv-00217-DC

(Doc. 92) at 5-26 (excepting the discussion of PBEX which is not raised by Plaintiffs here).

**B.**     **Plaintiffs Fail to Adequately Plead that Denholm Breached Fiduciary Duties to ProPetro.**

    **1.**     *Generally Applicable Delaware Law on Fiduciary Duty Renders Plaintiffs' Pleadings Inadequate Against Denholm.*

Plaintiffs raise two generalized grounds for fiduciary duty claims.  First, they allege that

the Defendants breached their fiduciary duties by disseminating false and misleading information.

Complaint ¶¶ 96-99.   Second, they plead that Defendants breached their duties by failing to

institute or monitor internal controls.   Complaint ¶¶ 100-102.   Both theories fail as to Denholm

under generally applicable Delaware fiduciary duty law because Plaintiffs do not specifically

articulate their allegations against Denholm.

First, Plaintiffs' fiduciary duty claim for disseminating false and misleading information

does not satisfy Rule 9(b)'s particularity requirement.  Rule 9(b) applies when "the plaintiff alleges

the defendants breached their fiduciary duties of care, loyalty, and good faith by causing or

allowing the Company to disseminate to the market materially misleading and inaccurate

information through public statements, including, but not limited to press releases and SEC

filings." *Hack v. Wright*, 396 F. Supp. 3d 720, 748-49 (S.D. Tex. 2019) (applying Delaware law)

(internal citations omitted).  Plaintiffs must thus plead the "who, what, when, where, and how of

the alleged fraud" *– as it allegedly pertains to Denholm*.  *Thompson*, 125 F.3d at 903.  They fail

to do so—instead, alleging through generalized assertion that *all* Defendants breached fiduciary

duties by propounding "materially misleading and inaccurate information through, among other

things, SEC filings and other public statements and disclosures."  Complaint ¶ 98.  This amounts

to impermissible group pleading that cannot sustain claims against Denholm as an individual.  *See*

*White*, 2018 WL 6068806, at *4 ("The Fifth Circuit and this district have clearly spelled out Rule 9(b)'s group pleading requirements. Parties cannot merely lump all defendants together. There has to be some work that segregate[s] the alleged wrongdoing of one from another.") (internal quotation marks omitted).

Second, Plaintiffs' claim that Denholm breached his fiduciary duties by not maintaining internal controls fails because they do not allege facts adequate to conclude that Denholm in particular had knowledge of the inadequacies and chose to do nothing about them, or otherwise acted with scienter. *See Hack*, 396 F. Supp. 3d at 748 (quoting source omitted) ("'[T]o state a viable *Caremark* claim . . . a plaintiff must plead the existence of facts suggesting that the board knew that internal controls were inadequate, that the inadequacies could leave room for illegal or materially harmful behavior, and that the board chose to do nothing about the control deficiencies that it knew existed.'"); Complaint ¶¶ 100-02.  A "*Caremark* claim" of this sort, based on lack of oversight, is generally oriented towards directors, not officers, because most officers have narrower portfolios than the all-encompassing executive responsibility and power exercised by the Board.  In any case, a *Caremark* claim requires adequate pleadings of scienter, and an allegation of specific facts demonstrating that Denholm "(a) utterly failed to implement any reporting or information system or controls; or (b) having implemented such a system or controls, consciously failed to monitor or oversee its operations thus disabling [himself] from being informed of risks or problems requiring [his] attention." *Stone ex rel. AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 370 (Del. 2006); *see also In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 970 (Del. Ch. 1996); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 123 (Del. Ch. 2009). Such a claim alleging "[a] breach of duty of attention or care in connection with the on-going operation of the corporation's business" is disfavored — "possibly the most difficult theory in

corporation law upon which a plaintiff might hope to win a judgment." *Caremark*, 698 A.2d at 967.

Plaintiffs do not approach this standard, because they do not plead facts adequate to conclude that Denholm, as an individual and in particular, "utterly failed" to implement any reporting or information system or controls. *Stone*, 911 A.2d at 370. To the contrary, Plaintiffs fail even to plead that Denholm had the individual *authority or responsibility* to devise or implement a system of controls. They then concede that *ProPetro* did, in fact, "adopt internal controls over disclosure and financial reporting." Complaint ¶ 88. This vitiates the first *Caremark* element, which requires that the defendant was responsible for implementing controls, but failed entirely to do so. *See In re General Motors Co. Derivative Litig.*, No. 9627-VCG, 2015 WL 3958724, at *15 (Del. Ch. June 26, 2015) ("Merely pleading that the General Counsel was not informed of certain litigation risks does not rise to the level of pleading with particularity facts demonstrating that the Board utterly failed to implement a system by which it would be informed of risks. It shows, perhaps, an overly bureaucratic system of 'information silos,' but not a conscious disregard of fiduciary duties . . . . In other words, the Plaintiffs complain that GM could have, should have, had a *better* reporting system, but not that it had *no* such system.")

Plaintiffs likewise fail to plead facts adequate to sustain an inference that Denholm, in particular, "*consciously* failed to monitor or oversee [ProPetro's] operations[,]" because they do not identify "red flags" identifying specific problems with internal controls that Denholm, in particular, consciously disregarded. *Stone*, 911 A.2d at 370 (emphasis added); *see also General Motors*, 2015 WL 3958724, at *16; *see also Hack*, 396 F. Supp. 3d at 748. Instead, Plaintiffs put the cart before the horse, pleading that Defendants generally must have known that the internal controls were inadequate because the Company has now identified vulnerabilities therein. Such

hindsight allegations cannot establish bad faith, especially when bereft of any specific allegations against a comparatively junior executive like Denholm.  *See Vitellone v. Evans*, No. H-13-1887, 2013 WL 6806179, at *6 (S.D. Tex. Dec. 20, 2013) ("A bad outcome, where the corporation incurs significant financial liability, or even where an employee may violate criminal laws, does not, with the benefit of hindsight, equate to bad faith by directors."); *Desimone v. Barrows*, 924 A.2d 908, 940 (Del. Ch. 2007) ("Delaware courts routinely reject the conclusory allegation that because illegal behavior occurred, internal controls must have been deficient, and the board must have known so.")

2.     ***Delaware Law Applying Fiduciary Duty Standards to Officers Renders Plaintiffs' Pleadings Inadequate against Denholm.***

Denholm was an officer of the Company—not a director.  Complaint ¶ 1.  He was a lower-ranking officer than either CEO Redman or CFO Smith.  Complaint ¶¶ 18-36.  His duties and prerogatives were commensurately narrower than the directors or the director-officers.  *See id.* Accordingly, Plaintiffs' fiduciary duty claims fail when examined in light of how courts apply Delaware law to corporate officers in particular.  The degree of responsibility and authority for officers varies depending upon the corporation at issue, and can be quite circumscribed as compared to the plenary authority wielded by directors.  In practice, then, courts construing Delaware law have found adequate grounds for fiduciary duty claims against corporate officers primarily when corporate officers *sabotage or subvert board directives,* purposely decline to provide the board with critical information, or *knowingly* falsify financial reports.

The common thread running through such cases is the finding that corporate officers hid key information from the directors, or actively worked for private interests against the board's expressed preferences.  The Court of Chancery of Delaware previously ruled that for officers alleged to have wrongly certified "the integrity of . . . financial statements and internal controls[,]"

a "breach [of loyalty] only extends to the failure to disclose the specific instances of wrongdoing of which they were aware." *Hampshire Grp., Ltd. v. Kuttner*, C.A. No. 3607-VCS, 2010 WL 2739995, at \*3 (Del. Ch. July 12, 2010).  Moreover, "'the court must examine the officers' state of mind to determine whether they acted in bad faith for a purpose other than advancing the best interests of the corporation.'" *In re: Wonderwork*, 611 B.R. 169, 202 (Bankr. S.D.N.Y. 2020), (quoting *Hampshire*, 2010 WL 2739995 at \*12).  When an officer "attempt[ed] in good faith to conduct a rational review" of the issues relevant to such certifications or wrongdoing, there is no breach. *Hampshire*, 2010 WL 2739995 at \*20.  Stated otherwise, a plaintiff must adequately plead the subversion of Board directives, the sabotage of the Company for personal gain, or the knowing and intentional facilitation of wrongdoing and financial misstatements to maintain a fiduciary duty claim against an officer.

In *Gantler v. Stephens*, 965 A.2d 695, 709 (Del. 2009), for instance, the two officer-defendants subverted the board's directives by sabotaging its mandated due-diligence process for two potential purchasers of the company, because they personally preferred a "privatization" via share reclassification to the contemplated outside acquisition.  *Gantler*, 965 A.2d at 700. Specifically, the complaint could proceed because the officers did not furnish due diligence materials to one potential purchaser after promising to do so, leading it to withdraw its bid; and kept the board carefully uninformed about the progress of negotiations until after the bidder withdrew in frustration, "all for the purpose of retaining the benefits of continued incumbency." *Id*. at 704.  Likewise, in *Davis v. Gutierrez*, No. 17-cv-147-JL, 2018 WL 1514869, \*13-14 (D. N.H., March 27, 2018), the complaint alleged the officer-defendants "misled the board concerning the negotiations" surrounding a joint venture agreement with Apple that, contrary to their representations, "put Apple in de facto control of [the company.]"  The complaint further alleged

that the officer-defendants hid substantial private reservations about the joint venture from the board, representing that the project was technologically feasible even while their employees "warned repeatedly . . . that the assumptions underlying the cost models were completely unrealistic and unattainable, and that [the company] would be unable to meet Apple's production requirements." *Id*.

In contrast to such deliberate acts, the mere allegations that an officer's actions facilitated the wrongful conduct of others, or that he signed an inaccurate statement regarding financial reporting or internal controls, are inadequate to plead a breach of fiduciary duty. Instead, such misstatements or facilitation must be "knowing" and in "bad faith." *Hampshire*, 2010 WL 2739995 at *3, 12, 34 (a corporate officer breaches his fiduciary duties if he is "*aware* of financial misreporting that involves high-level management and that has evaded the corporation's auditors" but "*nonetheless* certifies that he is not aware of any material weakness . . . .") (emphasis added); *see also Ryan v. Gifford*, 935 A.2d 258, 272 (Del. Ch. 2007) (complaint stated claim for breach of the duty of loyalty against CFO who *knew* about options backdating but "kept silent and *concealed his knowledge* in order to escape detection.") (emphasis added); *Dweck v. Nasser*, C.A. No. 1353-VCL, 2012 WL 161590, *19 (Del. Ch.  Jan. 18, 2012) ("Because [the CFO] was not personally interested in [the CEO's] expense reimbursements, he can be held liable for a breach of the duty of loyalty *only if* he *consciously* facilitated wrongful action by another for a purpose other than advancing the best interests of the corporation.") (emphasis added).[2]

---

[2] *See also Chen v. Howard Anderson*, 87 A.3d 648, 686-87 (Del. Ch. 2014) (citing *Gantler*, fiduciary duty claims against corporate officers could proceed **because** plaintiffs "cited evidence [including disparate treatment of competing offers] . . . that could support a reasonable inference [by corporate officers] of favoritism towards [a particular merger] consistent with their personal financial interests rather than the pursuit of maximal value for the stockholders."). *See also Dietrich v. Harrer*, 857 A.2d 1017, 1021 (Del. Ch. 2004) (fiduciary duty claims plausible **because** CEO discouraged and sabotaged acquisition bids despite aggressive board interest in acquisition, so that he could represent to the board that a personally-advantageous dilutive transaction was the best offer to hand); *Hampshire*, 2010 WL 2739995 (officers breached fiduciary duty *only* for knowing cooperation with lawbreaking by

When assessing the likelihood of such ill-intent, courts do not assume that an officer "must have known" about the impropriety — especially when more senior officers "represented" by their actions that their conduct was proper. *Hampshire,* 2010 WL 2739995 at 17 ("[B]y placing the items on his expense report, [a CEO] represented that these purchases were for a professional purpose.")  Courts recognize that officers "tr[y] not to spend much more time and costs reviewing" individual issues "than [is] financially justified, given their amount" and comparative significance, and therefore are unlikely to catch every instance of malfeasance. *Id*. at 20.  "[I]t is contextually important for a reviewing court to understand the time pressures employees operate under and their need to make judgments about how to allocate their time." *Id*.  Put simply, being present for the misconduct of others, or even verifying that internal controls are adequate, is not actionable against officers as breaches of fiduciary duty in the absence of clear pleadings on scienter.

When plaintiffs fail to adequately plead (or, at trial, prove) these essentials of fiduciary duty claims against officers, courts dismiss claims against the officers.  For instance, in *In re Dwight's Piano Co. v. Hendricks*, 424 B.R. 260, 287-295 (S.D. Ohio 2009), the U.S. District Court for the Southern District of Ohio applied Delaware law while considering fiduciary duty claims against a former CEO relating to the acquisition of her company.  The Court dismissed the action because the pleadings failed to show that the CEO actually misled the board or flouted its directives in a material manner. *Id*. at 294-95.  The fact that the CEO had kept preliminary, inchoate business strategy thoughts to herself before briefing the board on her final conclusions did not vitiate this finding. *Id*. at 288-90.  Neither did her brief consideration of assembling a Management Buyout to compete with the ultimate acquisition, because nothing material was withheld from the board. *Id*. at 290-92.  Real, material self-interested acts, disobedience of board directives, or withholding

---

senior executives or to the extent they "were aware" internal controls certifications were false — *not* for failures to identify fraudulent expense reimbursements or for controls certifications they believed were reasonable).

of information from the board were essential to a proper claim; in their absence, the fiduciary duty claim could not proceed.  *Id.*

**3.**   ***Plaintiffs Do Not Plead Facts Adequate to Establish a Breach of Denholm's Duty of Loyalty or Duty of Care Sufficient to Vitiate the Business Judgment Rule.***

The business judgment rule precludes courts from inquiring into the wisdom of the actions of corporate directors and officers, unless a plaintiff adequately pleads a violation of the officer's duties of loyalty and care.  *In re: Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 750 (Del. Ch. 2005) (internal citations omitted).[3] When the Rule applies, corporate acts are presumed to be legitimate, and "will not be overturned by the courts" unless they cannot be "attributed to *any* rational business purpose." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (emphasis added).  "To rebut the rule, a shareholder plaintiff assumes the burden of adequately pleading that directors, in reaching their challenged decision, breached any one of the *triads* of their fiduciary duty—good faith, loyalty or due care." *Id.* (citations omitted).  If a shareholder plaintiff fails to meet this evidentiary burden, the business judgment rule "attaches to protect **corporate officers and directors** and the decisions they make," and courts will not "second-guess" them.  *Cede & Co.*, 634 A.2d at 361 (emphasis added).

The duty of loyalty requires that an officer avoid "intentionally act[ing] with a purpose other than of advancing the best interests of the corporation[,]" but rather "ac[t] in the good faith belief that her actions are in the corporation's best interest.  *Stone v. Ritter*, 911 A.2d 362, 370 (Del. 2006) (quoting *Guttman v. Huang*, 823 A.23 492, 506 n.34 (Del. Ch. 2003)); *see also In re:*

---

[3] "Officers owe the same fiduciary duties as directors to the corporation *and benefit from the same business judgment rule.*" *In re Wonderwork*, 611 B.R. at 201 (emphasis added).[3] *See also Corporate Officers and the Business Judgment Rule: A Reply to Professor Johnson*, 60 Bus. Law. 865, (2005) ("[T]here can be little dispute at this point that the application of the business judgment rule to officer action involving their delegated discretionary authority is well established in the case law.")

*Walt Disney Co. Derivative Litig.*, 906 A.2d 27, 67 (Del. 2006).  "The requirement to act in good faith is 'a subsidiary element, *i.e.,* a condition, of the fundamental duty of loyalty.'"  *In re Wonderwork*, 611 B.R. at 194 (quoting *In re Orchard Enters.*, 88 A.3d 1, 32-33 (Del. Ch. 2014) (further internal citation omitted)).  The duty of care requires directors and officers to "use that amount of care which ordinarily careful and prudent [persons] would use in similar circumstances[.]"  *In re: Walt Disney Co*. *Deriv. Litig.*, 907 A.2d at 749.  In so doing, there is no duty to become "informed of every fact," but only those "material" and "reasonably available."  *Brehm v. Eisner*, 746 A.2d 244, 259 (Del. 2000).

    **4.**    ***Plaintiffs Fail to Allege a Breach of Loyalty Claim Against Denholm Based on Any Alleged Related-Party Transaction.***

The only remotely detailed allegation specifically involving Denholm set forth in the Complaint is that ProPetro purchased or leased an iron testing facility and a maintenance facility from a company that had borrowed funds from companies that were owned or partially owned by Denholm (the "Clarabby Transaction").  *See* Complaint ¶ 9.  This naked assertion, however, is insufficient to state a claim for breach of fiduciary duty against Denholm.  "The essence of a duty of loyalty claim is the assertion that a corporate officer or director has misused power over corporate property or processes in order to benefit himself rather than advance corporate purposes."  *Steiner v. Meyerson*, Civ. A. No. 13139, 1995 WL 441999, at *2 (Del. Ch. July 19, 1995). "At the core of the fiduciary duty is the notion of loyalty—the equitable requirement that, with respect to the property subject to the duty, a fiduciary always must act in a good faith effort to advance the interests of his beneficiary."  *US W., Inc. v. Time Warner Inc*., Civ. A. No. 14555, 1996 WL 307445, at *21 (Del. Ch. June 6, 1996). "Most basically, the duty of loyalty proscribes a fiduciary from any means of misappropriation of assets entrusted to his management and supervision." *Id*. "The doctrine of corporate opportunity represents . . . one species of the broad

fiduciary duties assumed by a corporate director or officer." *Broz v. Cellular Info. Sys., Inc.*, 673 A.2d 148, 154 (Del.1996). The doctrine "holds that a corporate officer or director may not take a business opportunity for his own if: (1) the corporation is financially able to exploit the opportunity; (2) the opportunity is within the corporation's line of business; (3) the corporation has an interest or expectancy in the opportunity; and (4) by taking the opportunity for his own, the corporate fiduciary will thereby be placed in a position inimicable to his duties to the corporation." *Dweck*, 2012 WL 161590, at *12. Plaintiffs make no allegations against Denholm with a proper nexus to any of these theories.

Plaintiffs also do not plead that Denholm acted on an opportunity that ProPetro would have been financially able to exploit on its own; that Denholm acted on an opportunity within ProPetro's line of business; that Denholm acted on an opportunity in which ProPetro had an interest or expectancy; or that Denholm acted on an opportunity that placed him in a position inimical to his duties to ProPetro. Accordingly, the Complaint fails to state a claim against Denholm for breach of the duty of loyalty.

In addition, the Clarabby Transaction is not a basis for finding a breach of Denholm's fiduciary duties because even taking Plaintiffs' pleadings at face value, it was not a reportable related-party transaction,[4] did not cause any loss to the company or its investors, and was not

---

[4] Plaintiffs' bare assertion at Complaint ¶ 76 that the Clarabby transaction "reportedly involved a business owned in part by defendant Denholm" cannot undermine the details of the November 13, 2019, Company disclosure Plaintiffs rely upon to substantiate the existence of that transaction. That disclosure clearly states that ProPetro's iron testing facility transaction was executed with an "entity that is ***owned 100% by [Denholm's] former business partner***"—and thus, 0% by Denholm himself. Complaint ¶ 76. Under governing law and regulations as applied to the details pled by Plaintiffs, therefore, the Clarabby transaction was thus not a "related-party transaction." *See* Motion to Dismiss Third Amended Class Action Complaint for Violations of the Federal Securities Laws, MO:19-cv-00217-DC (Doc. 92).

consummated by Denholm *at all*, much less for personal profit and to the detriment of ProPetro. Complaint ¶ 9.   Unlike *Gantler*, *Chen*, or *Dietrich*, Plaintiffs here do not plead that Denholm sabotaged an acquisition favored by the board of directors in order to promote a different deal that he personally profited from.  *See id.*  In fact, Plaintiffs do not plead any monetary gain to Denholm resulting from the Clarabby transactions; nor do they plead that the transactions were somehow disadvantageous to ProPetro.  *See id.*  Moreover, they do not plead *that the Clarabby transaction was not actually beneficial* to ProPetro.  *See id.*  They also do not plead that Denholm was decisive, or even influential, in ProPetro's decision to execute the transactions with Clarabby. *See id.*

Most critical, in light of these shortcomings, Plaintiffs fail to plead facts adequate to show that Denholm ***knew*** the Clarabby transactions rendered the Company's internal controls and its statements about them inadequate.  *See, e.g.*, *Hampshire*, 2010 WL 2739995 at *3, 12, 34; *Ryan v. Gifford*, 935 A.2d 258, 272 (Del. Ch. 2007); *Dweck*, 2012 WL 161590, *19; *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007).  This is especially so since the difficulty of establishing scienter based upon allegations of "related-party transactions" that are "at best debatable" is well established—especially when, as here, Plaintiffs cannot point to any alleged benefit obtained by a defendant as a result of the transaction. *See Lewy v. SkyPeople Fruit Juice, Inc.,* 11 Civ. 2700 (PKC), 2012 WL 3957916, at *18 (S.D.N.Y. Sept. 10, 2012).  Stated otherwise, if it was reasonable for Denholm to believe that he was not required to report the Clarabby transaction—and based on the facts alleged in Plaintiffs' pleadings, it was—then it follows that Denholm was not "*aware* of financial misreporting" due to the issue; and did not "*nonetheless* certif[y] that he [was] not" in an effort to mislead the board or shareholders.  *Hampshire*, 2010 WL 2739995 at *3, 12, 34 (emphasis added).

5.      *As pled, Denholm's Tangential Connections to the Allegations Against Others at ProPetro Do Not Substantiate a Breach of His Fiduciary Duties.*

Aside from the Clarabby transactions, the Plaintiffs plead nothing that can justify proceeding against Denholm.  At most, they imply that Denholm bears secondary responsibility for the Company's inattention to the alleged infractions of others.  *See* Complaint ¶¶ 73-81.  Specifically, these issues include: (1) the expense reimbursements paid to Redman and Smith; (2) the stock sales and pledges of Redman and Smith; and (3) the related-party transactions of Redman and Smith.  *See id.*  In the face of the business judgment rule and the treatment of such claims against officers under Delaware law, such meager pleadings are inadequate to proceed with a claim that Denholm breached fiduciary duties.  Plaintiffs do not allege that Denholm disobeyed or sabotaged board directives.  They do not specify any mechanism through which Denholm acted to profit in a self-interested manner at the expense of the Company.  And while they allege that the Defendants as a group failed to identify the alleged malfeasance of more senior officers regarding expense reimbursements, related-party transactions, and stock sales and pledges, they do not plead facts adequate to establish that Denholm in particular *knew* of these potential improprieties and hid them, or that his certifications of the Company's internal controls were thus made in bad faith.  Indeed, dozens of pages of the Complaint pass without any mention of Denholm doing anything at all as an individual.  *See* Complaint ¶¶ 37-75.

For example, Plaintiffs imply (without expressly or adequately pleading) that "the Defendants" are responsible for the Company's approval of expense reimbursements paid to Redman and Smith, even though Plaintiffs do not allege that Denholm himself received any such reimbursements.  Plaintiffs' failure to plead that Denholm did anything specific to facilitate those alleged infractions is independently fatal to proceeding under this theory.  Even were that not so, however, Delaware law would not support claims against Denholm on grounds that he failed to

police the actions of his superiors in these circumstances.  Delaware law recognizes that it is legitimate for officers to "tr[y] not to spend much more time and costs reviewing [expense] reports than [is] financially justified," and that "it is contextually important for a reviewing court to understand the time pressures employees operate under and their need to make judgments about how to allocate their time." *Hampshire*, 2010 WL 2739995, at *20.  Even assuming that Redman's and Smith's expense reimbursements were illicit, and that Denholm was part of a group of "the Defendants" who did not "catch" them, it does not follow that Denholm breached any duty.  "An officer breaches his or her fiduciary duty of loyalty when he *knowingly* causes the corporation to pay personal expenses in violation of the law and corporate policy." *In re Wonderwork, Inc*., 611 B.R. at 206 (emphasis added) (citing *Hampshire*, 2010 WL 2739995, at *25).  Indeed, in analogous circumstances (though involving far higher dollar amounts of more obviously dubious expenses, including purchases at "adult stores"), the Court of Chancery of Delaware rejected the assertion that subordinate officers breached their fiduciary duties by approving expenses that in hindsight turned out to be unwarranted, noting that no officer can devote his full attention to policing the expenses of his superiors:

> [The subordinate officer] did not get to review these with the help of suspicious lawyers who, aided by outside consultants, could spend unlimited time identifying the most questionable expenses in a huge number of expense reports.  He had to conduct the review alone, while performing his other substantial duties . . . overall, [plaintiff] has not met its burden of persuasion to show that [the subordinate officer] did not attempt in good faith to conduct a rational review of [the CEO's] expenses.

*Hampshire*, 2010 WL 2739995 at *17-20.  Here, Plaintiffs do not plead what Denholm's responsibilities were regarding Smith's and Redman's reimbursements.  *See* Complaint ¶ 73.  They do not allege that he personally reviewed them; that it was especially obvious that any should be disallowed; or that they were of such scale or scope that they warranted more of Denholm's attention.  *Id*.  They certainly do not plead facts sufficient to substantiate that Denholm *knew* the

reimbursements were improper.  *Id*.  In the absence of such pleadings, any claim for breach of fiduciary duty against Denholm on this ground fails.

The same is true regarding Redman and Smith's alleged stock sales, stock pledges, and related-party transactions. Plaintiffs fail to adequately plead that Denholm in particular had any knowledge of these matters; that he purposely withheld information about them from the board or from his superior officers (ironically—Redman and Smith); that he intentionally favored Redman's or Smith's interests in these matters over the Company's interests; or that he derived any personal benefit from them.  *See* Complaint ¶¶ 12, 81.  As before, considering "the time pressures employees operate under and their need to make judgments about how to allocate their time[,]" *Hampshire*, 2010 WL 2739995, at *20, Plaintiffs do not plead facts sufficient to show that Denholm "kept silent and concealed [actual] knowledge" regarding the activities of his superior officers.  *Dweck*, 2012 WL 161590 at *19.

Accordingly, as pled, none of these tertiary allegations against others create liability for Denholm simply because they rendered certain financial or controls certifications false after-the-fact.  The pleadings do not adequately allege that Denholm was "*aware* of financial misreporting that involves high-level management and that has evaded the corporation's auditors" but "nonetheless certifie[d] that he [was] not aware of any material weakness." *Hampshire*, 2010 WL 2739995 at *34.  A "breach [of loyalty]" regarding "the integrity of . . . financial statements and internal controls . . . only extends to the failure to disclose the specific instances of wrongdoing of which [Denholm was] aware."  *Id.* at *3.

## C.   Plaintiffs Fail to Adequately Plead Unjust Enrichment Against Denholm.

Plaintiffs' short and vague unjust enrichment claim against Denholm is parasitic upon their fiduciary duty allegations.  It asserts that all Defendants, including Denholm, obtained "profits,

benefits, and other compensation," but provides no specifics relevant to him.  *See* Complaint ¶¶ 105.  Plaintiffs allege no stock sales, stock pledges, expense reimbursements, or personal profits from "related-party" transactions against Denholm.  *See* Complaint ¶¶ 12, 80-81.  Accordingly, Plaintiffs solely claim that "justification [is] absent" for Denholm's salary and benefits as an employee.  *Taylor v. Kissner*, 893 F. Supp. 2d 659, 674 (D. Del. 2012).  The Court should reject this claim for several reasons.

First, it fails because the fiduciary duty claim against Denholm is itself inadequate, as set forth herein.  Plaintiffs do not plead any other grounds upon which Denholm's salary and benefits can be deemed illicit. *See id.* at 674 (in the absence of a properly alleged fiduciary duty claim, there was no "factual basis to conclude that the compensation received by each Defendant was paid without justification.")

Second, it fails because Delaware law does not recognize salary and benefits as unjust enrichment when they constitute compensation for real work performed, rather than as direct payment for malfeasance.  *See Triton Constr. Co., Inc. v. E. Shore Elec. Servs., Inc.* No. 3290-VCP, 2009 WL 1387115 (Del Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) (Despite "disloyal acts," "Kirk did not take the disputed compensation by force. Triton freely paid Kirk in exchange for his estimating and project management services on a full-time basis . . . . Because Kirk's salary and benefits constituted fair compensation earned by Kirk for his efforts at Triton, Triton has not proved that it is entitled to relief based on a claim of unjust enrichment against Kirk.")  Here, there is no question that Denholm performed real work for the Company.  To overcome the presumption that the Company's payment for services rendered was part of a valid and voluntary exchange for that real work, Plaintiffs must, at minimum, plead facts sufficient to explain "the necessary relationship between the conduct at issue and the alleged harm to the

company," and to show that "[t]he conduct underlying the . . . claim" is related to Denholm's compensation. *In re Nanthealth, Inc. Stockholder Litig.*, C.A. No. 2018-0302-AGB, 2020 WL 211065, at *8 (Del. Ch. Jan 14, 2020).  Here, as in *Nanthealth*, Plaintiffs do not approach this standard. Instead, "the conduct underlying the fiduciary duty claim—allegedly making false and misleading disclosures—is unrelated to . . . [the] receipt of compensation from the Company." *Id.* Indeed, uniquely for Denholm, Plaintiffs fail to identify any particular payment to him that has any direct tie to any specific allegation — no stock pledges or sales, no expense reimbursements, no personal profits from transactions. Indeed, they plead no facts that could establish that Denholm received money specifically due to malfeasance.  As such, Plaintiffs' unjust enrichment claim fails.

## V.    CONCLUSION AND PRAYER

Plaintiffs' claims against Denholm fail due to lack of jurisdiction and standing, and due to failure to adequately plead demand futility.  The contribution claim against Denholm is not ripe. Moreover, the assertions in the Complaint are insufficient on their merits to state any claim against him for contribution, breach of fiduciary duty, or unjust enrichment.  For all these reasons, Plaintiffs' action against Denholm should be dismissed with prejudice.

Respectfully submitted,

**BELL | NUNNALLY LLP**

*/s/ Jeffrey J. Ansley*

Jeffrey J. Ansley
State Bar No. 00790235
jansley@bellnunnally.com
Craig M. Warner
State Bar No. 24084158
cwarner@bellnunnally.com
Parker A. Burns
State Bar No. 24091843
pburns@bellnunnally.com

2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214-740-1400 Telephone
214-740-1499 Facsimile

**ATTORNEYS FOR DEFENDANT
IAN DENHOLM**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served electronically to all counsel of record on the 16th day of October, 2020, via the Court's CM/ECF system.

*/s/ Craig M. Warner*

Craig M. Warner