IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **BOCA RATON FIREFIGHTERS & POLICE PENSION FUND, DERIVATIVELY ON BEHALF OF PROPETRO HOLDING CORP.,** *Plaintiff*, | § § § § § § | |
| v. | § § | MO:20-CV-00030-DC |
| **SPENCER D. ARMOUR III, MARK S. BERG, ANTHONY BEST, PRYOR BLACKWELL, ALAN E. DOUGLAS, PHILLIP A. GOBE, JACK B. MOORE, DALE REDMAN, STEVEN BEAL, ROYCE W. MITCHELL, JEFFREY SMITH, and IAN DENHOLM,** *Defendants*. | § § § § § § § § § § | |

**ORDER GRANTING MOTIONS TO DISMISS**

BEFORE THE COURT are the Motions to Dismiss filed by Defendants ProPetro Holdings Corp. (ProPetro), Dale Redman (Redman), Royce W. Mitchell (Mitchell), Steven Beal (Beal), Jeffrey Smith (Smith), Ian Denholm (Denholm), and Spencer D. Armour, III (Armour), Mark S. Berg (Berg), Anthony Best (Best), Alan E. Douglas (Douglas), Phillip A. Gobe (Gobe), Pryor Blackwell (Blackwell), and Jack B. Moore (Moore) (together, the Director Defendants). (Docs. 67, 68, 69, 70, 72, 73, and 74). Lead Plaintiff Boca Raton Firefighters & Police Pension Fund (Lead Plaintiff) filed responses to each Motion to Dismiss. (Docs. 77–83). Defendants filed replies in support of their respective Motions to Dismiss. (Docs. 98–105). After due consideration of the pleadings, the parties' arguments, and the applicable law, the Court **GRANTS** the Motions to Dismiss. (Docs. 67, 68, 69, 70, 72, 73, and 74).

## I. PROCEDURAL BACKGROUND

Lead Plaintiff and Plaintiff Jye-Chun Chang (together, Plaintiffs) filed the instant lawsuit derivatively on behalf of ProPetro on January 31, 2020. (Doc. 1). Plaintiffs filed an Amended Complaint on August 17, 2020. (Doc. 63). The Amended Complaint lists ProPetro, Armour, Berg, Best, Douglas, Gobe, Moore, Blackwell, Redman, Beal, Schuyler E. Coppedge (Coppedge), Stephen Herman (Herman), Matthew H. Himler (Himler), Mitchell, Peter Labbat (Labbat), Smith, and Denholm as Defendants. *Id.* at 9–12. On December 30, 2020, Plaintiffs filed a stipulation of dismissal as to Defendants Coppedge, Herman, Himler, and Labbat. (Doc. 76).

Plaintiffs raise claims against all Defendants for breach of fiduciary duties for disseminating false and misleading information and failing to maintain internal controls, and for unjust enrichment. (Doc. 63 at 47–48). Moreover, Plaintiffs raise a derivative claim for contribution under §§ 10(b) and 21D of the Securities Exchange Act against Armour, Denholm, Redman, and Smith.[1] *Id.* at 48–49.

## II. FACTUAL BACKGROUND

---

1. The contribution claim was also raised against Coppedge, Herman, Himler, and Labbat. (Doc. 63 at 48–49). However, per the stipulation of dismissal (Doc. 76), the contribution claim against those Defendants was dismissed.

ProPetro is a publicly-traded corporation headquartered in Midland, Texas that provides hydraulic fracturing services to upstream oil and gas operators engaged in the exploration and production of oil and gas resources. (Doc. 63 at 2). Armour, Berg, Best, Douglas, Gobe, Moore, and Redman are ProPetro's directors. *Id.* at 2 n.1. Blackwell, Beal, and Mitchell are ProPetro's former directors. *Id.* Smith is the former Chief Financial Officer and the current Chief Administrative Officer. *Id.* Denholm served as the Chief Accounting Officer. *Id.*

Plaintiffs allege that ProPetro sold twenty-five million shares of its common stock at $14.00 per share in an initial public offering (IPO). *Id.* at 2. In the offering documents, ProPetro represented that ProPetro's board of directors was prepared to adopt a code of business conduct and ethics and assured investors that ProPetro would conduct quarterly reviews of its related-party transactions to ensure proper compliance. *Id.* ProPetro also represented that it enjoyed rapid revenue growth, improving profitability, and strong earnings per share and earnings per share growth in 2017, 2018, and 2019. *Id.*

Based on ProPetro's representations of strong financial results, the trading price of ProPetro's stock advanced to as high as $24.66 per share on April 22, 2019, from $14.00 per share on March 22, 2017. *Id.* at 3.

On August 8, 2019, ProPetro filed a Form 8-K with the United States Securities and Exchange Commission (SEC), informing that it needed to delay its second-quarter report and earnings call due to an ongoing review by its audit committee. *Id.* at 4. ProPetro also advised that it expected to report a material weakness in its internal control over disclosures. *Id.*

On October 9, 2019, ProPetro filed a second Form 8-K with the SEC, communicating that ProPetro was still reviewing one or more transactions involving real estate that did not

involve company vendors. *Id.* Further, ProPetro revealed that the audit committee's internal review identified several internal control deficiencies. *Id.*

The SEC informed ProPetro that it was under investigation on October 24, 2019. *Id.* at 5. The SEC also requested documents from ProPetro, including documents regarding the internal investigation. *Id.*

On November 19, 2019, ProPetro revealed that the audit committee had identified one related-party transaction not previously disclosed. *Id.* It also informed that at least two material weaknesses resulted in ProPetro's internal control over financial reporting and disclosure controls and procedures not being effective as of a prior date. *Id.* As a result, the trading price of ProPetro stock plummeted from $17.34 per share on August 8, 2019, to $7.34 per share on November 13, 2019. *Id.* at 7.

ProPetro filed a delayed annual report with the SEC for the year on December 31, 2019. *Id.* The 2019 Annual Report described how ProPetro failed to maintain effective internal control over its financial reporting and detailed the company's failure to implement internal controls on a systematic basis throughout ProPetro's operations. *Id.*

ProPetro further discovered that its Chief Executive Officer (CEO) violated the shareholders agreement before ProPetro's IPO and the insider trading compliance policy as part of the IPO. *Id.*

Plaintiffs argue that the Defendants' conduct resulted in ProPetro being sued in this Court in a related case and investigated by the SEC. *Id.* at 8. Plaintiffs also note that the board of directors has not taken legal action against the directors and officers responsible for the lawsuit and the SEC investigation. *Id.* Accordingly, Plaintiffs seek to "vindicate ProPetro's interests against its wayward fiduciaries." *Id.*

On October 15 and 16, 2020, Defendants moved to dismiss the claims against them. (Docs. 67–70, 72–74). The motions have been fully briefed.

### III.   LEGAL STANDARDS

#### A. Rule 12(b)(1)

A motion to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges the court's subject matter jurisdiction as to that claim. The burden of proof for a motion to dismiss under Rule 12(b)(1) is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court should grant a motion to dismiss "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Id.* When ruling on a motion seeking dismissal due to lack of subject-matter jurisdiction courts "may rely on the complaint, undisputed facts in the record, and the court's resolution of disputed facts." *Morris v. Thompson*, 852 F.3d 416, 419 (5th Cir. 2017).

#### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion, a court must "accept the complaint's well-pleaded facts as true and view them in the light most favorable to the plaintiff." *See Johnson*, 385 F.3d at 529. Further, the court does not look beyond the face of the complaint to determine whether the plaintiff states a claim under Rule 12(b)(6). *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). However, a district court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim. *See Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). "[P]laintiffs must allege facts to support the elements of the cause of action in order to make out a valid claim." *See Hale v. King*, 642 F.3d 492, 498 (5th Cir. 2011). The

court need not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *See Ferrar v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)); *see also DeMoss v. Crain*, 636 F.3d 145, 152 (5th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* Likewise, threadbare recitals of a cause of action's elements supported by conclusory statements will not survive a motion to dismiss. *Id.* Factual allegations must raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A plaintiff's failure to meet the specific pleading requirements should not automatically or inflexibly result in the dismissal of the complaint with prejudice to re-filing. *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000).

## IV.   DISCUSSION

Nominal Defendant ProPetro seeks dismissal based on lack of subject-matter jurisdiction. (Doc. 67 at 12). ProPetro argues that the claim for contribution is not ripe because it depends entirely on the speculative outcome of the securities class action that has not moved past the motion to dismiss stage. *Id.* Further, ProPetro argues that dismissal of the state law claims is appropriate once the federal claim for contribution is dismissed. *Id.* Alternatively, ProPetro contends that the state law claims should be dismissed based on *forum non-conveniens*. *Id.* ProPetro also alleges that Plaintiffs do not have standing because only the board of directors is vested with the power to sue on ProPetro's behalf. *Id.* at 14.

Redman, Mitchell, Beal, Smith, Denholm, and the Director Defendants join ProPetro's Motion to Dismiss. (*See* Docs. 68, 69, 70, 72, 73, 74). They also maintain that Plaintiffs do not state factual allegations against each Defendant to survive their respective Motions to Dismiss. (*See* Docs. 68, 69, 70, 72, 73, 74).

The Court will begin its analysis with ProPetro's Motion to Dismiss. ProPetro moves to dismiss on two grounds: (1) lack of jurisdiction and (2) standing. (Doc. 67 at 12–14. The Court will address the jurisdictional challenge first.

Plaintiffs' claim for contribution arises under federal law. (Doc. 63 at 48–49); *see also Marrero v. Abraham*, 473 F. Supp. 1271, 1276 (E.D. La. 1979) ("[T]he availability of contribution in any particular securities case is a matter of federal law." (citing *Gould v. American-Hawaiian Steamship Co.*, 387 F. Supp. 163, 167 (D. Del. 1974))). The contribution claim is brought on behalf of ProPetro against Defendants Armour, Denholm, Redman, and Smith. (Doc. 63 at 48–49). Plaintiffs allege that if ProPetro is found liable for violating federal securities law, ProPetro's "liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of the [defendants named in the securities class action]." *Id.* at 49. Moreover, they plead that Armour, Denholm, Redman, and Smith had the power to, and did, directly or indirectly control or influence ProPetro's business operations and financial affairs. *Id.*

ProPetro argues that this Court does not have jurisdiction over the contribution claim— the only federal claim raised in the Amended Complaint—because it is not ripe. (Doc. 67 at 20–22). Moreover, ProPetro urges the Court to exercise discretion and decline supplemental jurisdiction over the state law claims. *Id.* at 23–24. Alternatively, ProPetro argues that the Court

should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(2) because the state law claims predominate over the federal contribution claim. *Id.* at 24–26.

Plaintiffs respond that the contribution claim is not "unripe" merely because it is contingent on a final judgment in a related case. (Doc. 77 at 14–15). Plaintiffs argue that if they are required to wait for a verdict in the securities class action before asserting contribution, they will be forced to relitigate the same claims and incur additional costs. *Id.* at 16.

Under Article III of the Constitution, a claim must present a case or controversy before the Court may exercise jurisdiction. *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 48 n.18 (1993). "A case or controversy must be ripe for decision, meaning that it must not be premature or speculative." *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002) (citation omitted). Thus, ripeness is a prerequisite to the exercise of jurisdiction. *Id.* (citation omitted). A claim is not ripe if it "rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (citations omitted).

Most federal cases considering federal contribution claims in the context of securities law violations have dismissed such claims because they are "based [and dependent] on findings of liability and damages in a separate legal action." *See, e.g.*, *Pall v. KPMG, LLP*, No. 3:03CV00842 AWT, 2006 WL 2800064, at *3 (D. Conn. Sept. 29, 2006) (citing *In re Cendant Corp. Derivative Action Litig.*, 96 F. Supp. 2d 394, 397 (D.N.J. 2000)) (dismissing a federal contribution claim under § 21D of the Securities Exchange Act because it was contingent upon a finding of liability in a related action); *see also DiBattista v. Greco*, No. CV:20-590-RGA, 2021 WL 327399, at *7 (D. Del. Jan. 31, 2021) (recommending dismissing the contribution claim because it was contingent upon a finding of liability in a related securities action); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 282 F. Supp. 3d 1074, 1115 (N.D.

Cal. 2017) (dismissing the contribution claim because there was no final judgment in the related securities class action); *In re Brocade Communications Sys., Inc. Derivative Litig.*, 615 F. Supp. 2d 1018, 1049 (N.D. Cal. 2009) (same). Here, Plaintiffs bring a contribution claim under §§ 10(b) and 21D of the Securities Exchange Act. (Doc. 63 at 48–49). Section 10(b) of the Securities Exchange Act provides for a private right of action for contribution, and § 21D governs the application of any private right for contribution asserted under the Securities Exchange Act. *See Lemon Bay Partners LLP v. Hammonds*, No. 05-327-GMS, 2007 WL 1830899, at *4 (D. Del. June 26, 2007). Section 21D provides:

> Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.

15 U.S.C. § 78u-4(f)(2)(A). Plaintiffs concede that their federal contribution claim depends on whether ProPetro is found liable in the securities class action. (Doc. 63 at 49 ¶ 108) ("If ProPetro is ultimately found liable for violating the federal securities laws, the company's liability will arise, in whole or in part, from the intentional, knowing, or reckless acts or omissions of some or all of the securities class action defendants as alleged herein."). Thus, the injury and the availability of a contribution claim depends on the outcome of the securities class action, rendering the contribution claim not ripe for adjudication. The Court cannot exercise jurisdiction over the contribution claim for these reasons, and the claim must be dismissed without prejudice.

Plaintiffs argue that the federal contribution claim is ripe and should not be dismissed merely because it is contingent upon final judgment being rendered in a related case. (Doc. 77 at 15). Plaintiffs cite several cases for support. However, *In re Tyco Int'l*, *Siebert*, and *NuCal Foods* did not deal with a contribution claim under §§ 10b and 21D of the Securities Exchange Act. *See generally In re Tyco Intern., Ltd.*, No. 02-1335-B, 2004 WL 524429, at *4 (D.N.H. Mar. 16,

9

2004), *aff'd sub nom. In Re Tyco Intern. Ltd. Sec. Litig.*, 422 F.3d 41 (1st Cir. 2005) (considering a common law claim for contribution); *Siebert v. Gene Sec. Network, Inc.*, 11-CV-01987-JST, 2013 WL 5645309, at *3 (N.D. Cal. Oct. 16, 2013) (same); *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F. Supp. 2d 1037, 1042 (E.D. Cal. 2013) (same). Plaintiffs also argue that allowing the contribution claim to proceed will advance fairness, judicial efficiency and deter wrongdoing. (Doc. 77 at 15). However, the promotion of those goals is not a basis to exercise jurisdiction over claims that are not ripe. Moreover, by dismissing Plaintiffs' claim for contribution, the Court does not hold that §§ 10(b) and 21D and Rule 10b-5 do not allow a claim for contribution. Instead, the Court rules that, at this time, Plaintiffs' claim for contribution is not ripe.

In sum, the Court holds that it does not have subject-matter jurisdiction over the claim for contribution under §§ 10(b) and 21D of the Securities Exchange Act against Armour, Denholm, Redman, and Smith, and dismisses without prejudice said claim. Accordingly, the Court need not address the parties' additional arguments for and against the dismissal of the contribution claim.

Since this Court no longer has original jurisdiction because it has already dismissed the only federal claim, supplemental jurisdiction over state law claims should be declined. This is also true because the interests of judicial economy, convenience, and fairness will be served by declining to exercise supplemental jurisdiction over any state law claims.

In this circuit, the general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated before trial. *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). However, this rule is neither mandatory nor absolute. *See id.* Instead, the Fifth Circuit reviews a district court's decision to decline supplemental jurisdiction for an abuse of discretion. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *see also Robertson v. Neuromedical Center*, 161 F.3d 292, 296 (5th Cir. 1998) ("[D]istrict court has

wide discretion[.]"). Given that broad discretion, this Court declines to exercise supplemental jurisdiction over any remaining state law claims as the only federal claim over which this Court had original jurisdiction has been dismissed. Moreover, the Court need not address the parties' additional arguments for and against the dismissal of the state law claims.

Because no set of facts would, at this time, entitle Plaintiffs to relief for a contribution claim under the Securities Exchange Act, the Court grants the Motions to Dismiss filed by ProPetro, Redman, Beal, Smith, Denholm, and the Director Defendants as to the contribution claim. (Docs. 67, 68, 69, 70, 72, 73, and 74). Moreover, because the Court declines to exercise supplemental jurisdiction over the state law claims, the Court also grants the Motions to Dismiss as to the state law claims. (Docs. 67, 68, 69, 70, 72, 73, and 74).

### V. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss. (Docs. 67, 68, 69, 70, 72, 73, 74). Accordingly, all of the claims asserted in the Amended Complaint are **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

It is so **ORDERED**.

SIGNED this 15th day of September, 2021.

DAVID COUNTS
UNITED STATES DISTRICT JUDGE